U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**DOCKETED**

OCT 2 2 2003

| | |
|---|---|
| BRADLEY KEYWELL, *et al.*, ) | Case Nos. **03 C 5538** |
| ) | and **03 C 6084** |
| Appellants, ) | (consolidated) |
| Cross-Appellees, ) | |
| ) | |
| v. ) | Judge Charles R. |
| ) | Norgle, Sr. |
| ) | |
| HA-LO INDUSTRIES, INC., ) | Appeals from |
| ) | Bankruptcy Adversary |
| Appellee, ) | No. 03 A 1941 |
| Cross-Appellant. ) | Judge Carol A. |
| ) | Doyle |

FILED

OCT 2 1 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF FILING

PLEASE TAKE NOTICE that on October 21, 2003, counsel for Lou Weisbach caused to

be filed with the Clerk of the United States Bankruptcy Court for the Northern District of

Illinois, 219 South Dearborn Street, Chicago, Illinois, the ***Opening Brief and Appendix of the***

***Intervenors,*** a copy of which is hereby served upon you.

Dated: October 21, 2003          By: _Jed D. Bertocchi_ _____

Counsel for Lou Weisbach:
Joel D. Bertocchi
MAYER, BROWN, ROWE & MAW LLP
190 South LaSalle Street
Chicago, IL 60603

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BRADLEY KEYWELL, *et al.*, | ) | Case Nos. **03 C 5538** |
| | ) | and **03 C 6084** |
| Appellants, | ) | (consolidated) |
| Cross-Appellees, | ) | |
| | ) | |
| v. | ) | Judge Charles R. |
| | ) | Norgle, Sr. |
| | ) | |
| HA-LO INDUSTRIES, INC., | ) | Appeals from |
| | ) | Bankruptcy Adversary |
| Appellee, | ) | No. 03 A 1941 |
| Cross-Appellant. | ) | Judge Carol A. |
| | ) | Doyle |
| | ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing *Opening Brief and Appendix of the*

*Intervenors* was served upon the following:

Howard Mittelman, David H. Mendelson, Lauren S. Mendelson, Darren Lisse,
Patrick Sheridan, and Dan Lettieri, Defendants Herein

Katharine M. Ryan
Marc I. Willner
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East, Suite 4000
Bala Cynwyd, PA 19004
(610) 667-7706

Clifford S. Goodstein
Susan M. Greenwood
MILBERG WEISS BERSHAD
 HYNES & LERACH LLP
One Pennsylvania Plaza – 49th Floor
New York, New York 10119
(212) 594-5300

Marvin A. Miller
Jennifer Winter Sprengel

2

Matthew E. Van Tine
MILLER FAUCHER and CAFFERTY LLP
30 North LaSalle Street, Suite 3200
Chicago, Illinois  60602
(312) 782-4880

Stewart Cearley
CAULEY GELLER BOWMAN & RUDMAN, LLP
11311 Arcade Drive, Suite 200
P.O. Box 25438
Little Rock, Arkansas  72221
(501) 312-8500

Paul J. Geller
Jack Reise
CAULEY GELLER BOWMAN & RUDMAN, LLP
1 Boca Place
2255 Glades Road, Suite 421A
Boca Raton, Florida  33431
(561) 750-3000

Adam J. Levitt
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
656 West Randolph Street
Suite 500 West
Chicago, Illinois  60602
(312) 466-9200

Michael S. Etkin
Ira Levee
LOWENSTEIN SANDLER
65 Livingston Avenue
Roseland, New Jersey  07068
(973) 597-2500


HA-LO Industries, Inc., Debtor and Debtor-in-Possession, Plaintiff Herein

Bruce S. Sperling
Steven C. Florsheim
Robert D. Cheifetz
SPERLING & SLATER
55 West Monroe Street
Suite 3200
Chicago, Illinois  60603
(312) 641-3200

3

Gregory J. Kilrea, Linden Nelson, Bradley Keywell,
and Eric Lefkofsky, Intervenors

Samuel S. Cohen
WILDMAN, HARROLD, ALLEN & DIXON
225 West Wacker Drive, Suite 300
Chicago, Illinois 60606
(312) 201-2000

Thomas P. Cimino, Jr.
David L. Doyle
VEDDER, PRICE, KAUFMAN & KAMMHOLZ
222 North LaSalle Street, Suite 2300
Chicago, Illinois 60601
(312) 609-7500

Steven R. Lefkofsky
PETERSEN & LEFKOFSKY, P.C.
39533 Woodward Avenue
Suite 170
Bloomfield Hills, Michigan 48304
(248) 644-6400

Allan T. Slagel
Howard A. Davis
Jared M. Wayne
SHEFSKY & FROELICH LTD.
444 North Michigan Avenue
Suite 2500
Chicago, Illinois 60611
(312) 527-4000

Simon J. Hill
Bradley J. Schram
HERTZ, SCHRAM & SARETSKY, P.C.
1760 South Telegraph Road
Suite 3000
Bloomfield Hills, Michigan 48302
(248) 335-5000

by faxing a copy of the same, pursuant to the court's agreed order, at 190 South LaSalle Street,
Chicago, Illinois this 21st of October, 2003.

Dated: October 21, 2003                    Respectfully submitted,


By: _____

Counsel for Lou Weisbach:
Joel D. Bertocchi
MAYER, BROWN, ROWE & MAW LLP
190 South LaSalle Street
Chicago, IL 60603

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRADLEY KEYWELL, *et al.*, | ) | Case Nos. **03 C 5538** |
| | ) | and **03 C 6084** |
| Appellants, | ) | (consolidated) |
| Cross-Appellees, | ) | |
| | ) | |
| v. | ) | Judge Charles R. |
| | ) | Norgle, Sr. |
| | ) | |
| HA-LO INDUSTRIES, INC., | ) | Appeals from |
| | ) | Bankruptcy Adversary |
| Appellee, | ) | No. 03 A 1941 |
| Cross-Appellant. | ) | Judge Carol A. |
| | ) | Doyle |

**DOCKETED**

OCT 2 2 2003

## OPENING BRIEF AND APPENDIX OF THE INTERVENORS

Thomas M. Durkin
Joel D. Bertocchi
Richard G. Ziegler
Sheri L. Drucker
Mayer, Brown, Rowe & Maw LLP
190 S. LaSalle Street
Chicago, IL 60603
(312) 782-0600

Allan Tracy Slagel
Howard A. Davis
Patricia S. Spratt
Shefsky & Froelich, Ltd.
444 N. Michigan Avenue
Chicago, IL 60611
(312) 527-4000

Thomas P. Cimino, Jr.
Vedder, Price, Kaufman & Kammholz
222 N. LaSalle Street
Suite 2300
Chicago, IL 60601
(312) 609-7500

Robert P. Cummins
Cummins & Cronin, LLC
77 West Wacker Drive, Suite 4800
Chicago, IL 60601
(312) 578-0500

Bart T. Murphy
Samuel S. Cohen
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229
(312) 201-2000

Simon J. Hill
Bradley J. Schram
Hertz, Schram & Saretsky, P.C.
1760 South Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000

Steven R. Lefkofsky
Petersen & Lefkofsky
39533 Woodward Avenue
Suite 170
Bloomfield Hills, MI 48304
(248) 644-6400





U.S. DISTRICT COURT

# Table of Contents

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    I.     Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    II.    The Bankruptcy Court Had No Jurisdiction To Grant
           The Injunction Because the Class Plaintiffs' Suit Is Not
           "Related To" The HA-LO Bankruptcy Proceeding . . . . . . . . . . . 14

    III.   The Bankruptcy Court's Injunction Undermines The
           Important Public Interest In Protecting D&O Coverage
           For Corporate Officers And Directors. . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

i

# Table of Authorities

*Page*

**Cases:**

*Adelphia Communications Corp.,*
285 B.R. 580 (S.D.N.Y. Bankr. 2002) . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Adelphia Communications Corp.,*
298 B.R. 49 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Celotex Corp. v. Edwards,*
514 U.S. 300 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 11, 23

*City of Joliet v. Bank One, Chicago, N.A.,*
210 B.R. 556 (Bankr. N.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . 20

*Fisher v. Apostolou,*
155 F.3d 876 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Farmland Indus., Inc.,*
291 B.R. 489 (Bankr. W.D. Mo. 2003) . . . . . . . . . . . . . . . . . . . . . 20

*In re FedPak Systems, Inc.,*
80 F.3d 207 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15, 20

*In re L&S Industries, Inc.,*
989 F.2d 929 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Louisiana World Exposition,*
832 F.2d 1391 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Xonics, Inc.,*
813 F.2d 127 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 14, 24

*In re Youngstown Osteopathic Hospital Assn.,*
271 B.R. 544 (N.D. Oh. Bankr. 2002) . . . . . . . . . . . . . . . . . . . . . . 20

*Megliola v. Maxwell,*
293 B.R. 443 (N.D. Ill. 2003) . . . . . . . . . . . . . . . . . . . . . . 1, 12, 21, 22

*Pintlar Corp. v. Fidelity & Cas. Co. of N.Y.,*
124 F.3d 1310 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Table of Authorities - Continued**

Page

*Zerand-Bernal Group, Inc. v. Cox,*
     23 F.3d 159 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

**Miscellaneous:**

Gerald T. Dunne, *The Bottomless Pit of Bankruptcy Jurisdiction,*
     112 Banking L.J. 957 (November-December 1995) . . . . . . . . . . . . . . . 15

Gregory J. Kilrea, Lou Weisbach, Linden Nelson, Eric Lefkofsky and Bradley Keywell, Intervenors in the underlying Bankruptcy Court proceeding, Appellants in No. 03 C 5538 and Cross-Appellees in No. 03 C 6084 (collectively referred to herein as "Intervenors" or "the directors and officers"), hereby submit their opening brief on appeal in No. 03 C 5538, as follows:

## JURISDICTIONAL STATEMENT

This is an appeal from the entry of a preliminary injunction by the Bankruptcy Court. This court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a)(1) and (3). Preliminary injunctions entered by the bankruptcy court have been treated as final orders appealable as of right under §158(a)(1). *Megliola v. Maxwell*, 293 B.R. 443, 447 (N.D. Ill. 2003). In the alternative, the injunction may be considered an interlocutory order appealable by leave of court under §158(a)(3). This court granted the Intervenors' motion for leave to appeal in this case on September 19, 2003.

## INTRODUCTION

The Intervenors, former officers and directors of HA-LO Industries, Inc. ("HA-LO"), the debtor in bankruptcy in the underlying bankruptcy proceedings, appeal from a preliminary injunction entered by the Bankruptcy Court in HA-LO's Chapter 11 proceedings. The Intervenors are also defendants in a securities fraud class action filed by a proposed class of HA-LO stockholders ("the Class Plaintiffs") pending before Judge Holderman, that relates to their actions as officers and

1

directors of HA-LO. In the injunction herein appealed, the Bankruptcy Court, at the behest of HA-LO, barred the payment of any judgment or settlement of the securities fraud action using the proceeds of several Directors' and Officers' ("D&O") insurance policies. HA-LO itself had purchased these policies, with coverage values totaling $50 million, for its directors and officers (including the Intervenors) before it filed for bankruptcy in order to assure the Intervenors, among others, that they would have a protective umbrella to safeguard them from liabilities arising from their actions as officers and directors of HA-LO.[1]

The Bankruptcy Court's injunction denies the Intervenors access to those proceeds to satisfy any settlement or judgment in the securities fraud action until the conclusion of a bankruptcy  adversary proceeding HA-LO has filed only against HA-LO's former CEO, John R. Kelley, Jr. Significantly, and although there is some overlap, that action asserts claims distinctly more limited than those included in the securities fraud suit. In its action against Mr. Kelley, HA-LO is seeking some $300 million in damages. (Only Mr. Kelley is a defendant in HA-LO's suit, but the Intervenors and Mr. Kelley are defendants in the securities fraud suit.) The injunction thus prevents the Intervenors from making use of insurance that was purchased by HA-LO specifically to protect them from the very sort of liability that might be imposed on them in the securities fraud suit, while

---

[1]The "Intervenors" are referred to as such because they intervened as defendants in the underlying Bankruptcy Court injunction proceeding, which was originally filed by HA-LO against the Class Plaintiffs only.

2

HA-LO, which cannot directly claim on those policies, may in the meantime pursue its action against Mr. Kelley and seek, through its action against him, to capture those insurance proceeds for itself.

If HA-LO obtains a judgment against him, Mr. Kelley would seek to use the insurance proceeds to pay it, leaving none available to protect the Intervenors from liability in the securities fraud suit. The net effect of the injunction, then, is to provide Mr. Kelley with coverage rights superior to those of the Intervenors, even though the policies assign him no such advantage; in fact, because the policies contain "insured vs. insured" exclusions and both Mr. Kelley and HA-LO (as a potential indemnifier) may be considered "insured" under the policy, Mr. Kelley may have no right to coverage, while the rights of the Intervenors to coverage are not seriously disputed. Nevertheless, the injunction leaves only Mr. Kelley with access to the proceeds. Assuming, as HA-LO intends, that it obtains a substantial judgment (by trial or settlement) against Mr. Kelley that is paid by the D&O insurance, HA-LO, with the Bankruptcy Court's assistance, will have essentially retroactively cancelled the insurance it bought for the Intervenors when they served as its officers and directors. HA-LO could not have done this before it went bankrupt, and nothing about its current state should permit it to do so now.

The Bankruptcy Court's injunction was predicated upon its holding that the securities fraud suit pending against the Intervenors was "related to" the HA-LO

3

bankruptcy, *see* 28 U.S.C. §1334(a), and therefore subject to being enjoined under 11 U.S.C. §105(a). As will be discussed below, while the Bankruptcy Court's injunctive powers under §105(a) can extend to third parties and their litigation, the term "related to" is not without teeth; indeed, as the Supreme Court has warned, "a bankruptcy court's 'related to' jurisdiction cannot be limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).

The Bankruptcy Court's order stretches that limited jurisdiction beyond its breaking point. Its holding that the securities fraud action pending before Judge Holderman was "related to" HA-LO's bankruptcy depends on a mischaracterization of the claims in that suit and its relationship to the D&O policies. The Intervenors are defendants with Mr. Kelley in the securities fraud suit but not in HA-LO's adversary action, which names only Mr. Kelley. The suit before Judge Holderman exposes the Intervenors to liability for claims alleging accounting irregularities that in part predate the Starbelly acquisition and alleged financial misstatements made after that transaction, along with Starbelly-related claims. HA-LO's bankruptcy action against Mr. Kelley revolves entirely around the purchase of Starbelly. Accordingly, there is not identity between the issues raised in the two proceedings. Instead, HA-LO's assertion of relatedness depends on two contingencies: the hope that it will win its case against Mr. Kelley and the hope that, if it prevails on those claims, the proceeds of the D&O policies will be made available to Mr. Kelley to pay that judgment and will thus end up in the

4

bankruptcy estate.

This holding by the Bankruptcy Court is neither fair as a matter of equity nor a reasonable interpretation of the "related to" restriction on its jurisdiction. Because Mr. Kelley was sued by HA-LO, the purchaser of the insurance policies, doubt exists as to whether they cover him at all with respect to the bankruptcy adversary action, as compared to the indisputable rights of the Intervenors to use them in the securities fraud action. Nonetheless, by its injunction, the Bankruptcy Court has placed Mr. Kelley ahead of the Intervenors, leaving the Intervenors with whatever (if anything) is left after HA-LO's case against Mr. Kelley is tried or settled. The Bankruptcy Court's entire rationale for prioritizing Mr. Kelley was that a judgment against him in the adversary action that was paid off by the D&O policies would add to the HA-LO bankruptcy estate. That reason as the sole basis for a §105 injunction exceeds the "related to" limitations on the Bankruptcy Court's jurisdiction. The proceeds of the D&O policies are not the property of the HA-LO estate. More to the point, neither the adversary action against Mr. Kelley nor the securities fraud suit against the Intervenors is a claim against those policies; they are, instead, claims against the assets of the individual defendants, who are (or, in Mr. Kelley's case, may be) entitled to the protection of the policies' proceeds.

The bare assertion that the policies' proceeds might someday be used to pay either set of claims, which was all that supports this injunction, does not establish

any legally cognizable "relatedness" to administration of the HA-LO bankruptcy. The mere size of the bankruptcy estate, without more, is far too thin a reed upon which to rest a finding of relatedness under §1334(b); were that the rule, Bankruptcy Courts could enjoin *any* claim or lawsuit against *anyone* that might have money that somehow, some way, potentially might end up in the estate. This overbroad and hypothetical interpretation of "related to" is precisely what *Celotex* warned against; it is "limitless."

## STATEMENT OF ISSUES

1.  Whether a finding of relatedness under 28 U.S.C. §1334(b) between the Class Plaintiffs' securities fraud suit and the HA-LO bankruptcy proceeding can be based solely on the contingent possibility that the defendant in HA-LO's adversary action may later have access to the proceeds of the D&O insurance policies, where neither HA-LO nor the Class Plaintiffs have a direct claim on those proceeds and the effect of the injunction is to prevent the Intervenors, who do have such a claim, from obtaining the protection of the policies.

2.  Whether a bankruptcy court injunction that deprives officers and directors of the benefit of insurance policies purchased by the debtor to protect them from liability in their capacities as such contravenes the public interest in assuring that such persons will be willing to serve in positions of corporate governance.

6

## STATEMENT OF THE CASE

HA-LO Industries, Inc. was a marketing and promotional products company. During its pre-bankruptcy existence it purchased and maintained D&O insurance for the benefit of its officers and directors, including the Intervenors. The policies provide protection for the Intervenors for liability imposed based on their conduct as directors or officers of HA-LO, including liability due to securities fraud claims and costs of defense. They further provide that HA-LO will be reimbursed by the insurance companies for any amounts it pays to or on behalf of its directors and officers for covered liabilities or expenses, but they do not provide relevant coverage for HA-LO itself. The policies are "aggregate limit" policies, meaning that the payment of a dollar of proceeds on behalf of any insured person reduces the amount available to cover other insured persons. The policies also contain "insured vs. insured" exclusions which provide that the insurers are not obligated to pay any claim to an insured party, (which, for these purposes, may include HA-LO) on behalf of another insured party.

In November of 1999, the Board of Directors of HA-LO elected Mr. Kelley as CEO with the avowed purpose of taking advantage of opportunities related to the internet and "e-commerce." In January of 2000, HA-LO announced its intention to buy Starbelly.com, an internet-related company, for a combination of cash and HA-LO stock. Following due diligence and a fairness opinion, the purchase was completed in May 2000. The end results of this purchase, coming just before the

7

internet boom peaked, were not ultimately favorable to HA-LO, which was unable to make the investment required to develop technology obtained from Starbelly while simultaneously coping with mounting losses in its conventional business. HA-LO ultimately filed for Chapter 11 bankruptcy in 2001.

In November of 2001, HA-LO announced in a filing with the Securities and Exchange Commission that it would restate earnings from 1998 through the first quarter of 2001 for accounting reasons. In January of 2002, the Class Plaintiffs, HA-LO stockholders, filed various securities fraud lawsuits, which were eventually consolidated before Judge Holderman as the class action lawsuit captioned *Spagnola v. Kilrea*, No. 02 C 270 (N.D. Ill.). In their amended complaint, filed in May of 2002 (included in the appendix to this brief as Exhibit 3), the Class Plaintiffs named as defendants the Intervenors and Mr. Kelley, in their capacities as officers and directors of HA-LO, but did not name HA-LO itself. The Class Plaintiffs allege misconduct dating back at least to the opening of their alleged class period in February of 1999, almost a year before the Starbelly purchase was announced and well over a year before it was completed. They also allege material omissions related to the Starbelly acquisition and its ability to contribute to the financial success of HA-LO, and misstatements of HA-LO's financial condition after the transaction. See Exhibit 3, ¶¶ 1-3. In that case the parties have completed fact discovery and have limited expert discovery remaining, with a trial date of March 22, 2004.

In July of 2002, seven months after the filing of the securities fraud suits, HA-LO filed an adversary complaint in its bankruptcy proceeding against Mr. Kelley for breach of fiduciary duty and corporate waste. The allegations in this complaint (which is Exhibit 4 of the Appendix) are limited to claims regarding the Starbelly acquisition, see Exhibit 4, ¶¶ 1-5, 49, 54, 58, and do not include any claims about alleged accounting irregularities or financial condition misrepresentations. The adversary matter is to be tried in the Bankruptcy Court in January of 2004. Although the complaint does not specify an amount of damages, HA-LO's damages expert report indicates that the amount it will seek exceeds the total amount of the insurance proceeds by several multiples.

On May 28, 2003, HA-LO filed an adversary complaint and accompanying motion for a preliminary injunction in the bankruptcy proceeding, naming the Class Plaintiffs as defendants. In its motion HA-LO asked the Bankruptcy Court to enjoin the Class Plaintiffs from any further prosecution of the *Spagnola* lawsuit.[2/] The Intervenors successfully sought to intervene in this action, and joined the Class Plaintiffs in opposing the injunction.

The Bankruptcy Court granted the preliminary injunction in part in an oral ruling on July 16, 2003. See Transcript of Hearing, 7/16/03 (hereinafter "Tr.", and included in the Appendix as Exhibit 1), at p. 14-31. The court based its

---

[2/] HA-LO had previously filed such a complaint against the Class Plaintiffs in July of 2002, which had been resolved by agreement.

ruling on a finding that the Class Plaintiffs' securities fraud lawsuit was "related to" the HA-LO bankruptcy and therefore fell within the court's jurisdiction under 28 U.S.C. §1334(b). The court described the Class Plaintiffs' suit as having been filed against Mr. Kelley and concerning "mostly" the acquisition of Starbelly, Tr. 17, ignoring the facts that the Class Plaintiffs had also sued the five Intervenors on the same claims, which included accounting fraud claims predating the Starbelly acquisition as well as allegations of financial misstatements that post-dated the transaction. (By contrast, HA-LO has only sued Mr. Kelley.) In addressing HA-LO's reason for seeking the injunction, the court asserted that "both the [Class Plaintiffs] and HA-LO are *seeking recovery from* the same pool of assets, the proceeds of the D and O insurance and Kelley's personal assets." Tr. at 17 (emphasis added); see also Tr. 22 ("In this case, both HA-LO and the [Class Plaintiffs] are seeking recovery from the same limited pool of money as a result of the same acts. . . both anticipate recovering from a common pool of assets, the D and O insurance policies"). It did so despite the fact that neither the Class Plaintiffs nor HA-LO are, nor could be, claiming on the policies, which provide relevant coverage only to the directors and officers, *i.e.* Mr. Kelley and the five Intervenors. The court thus based its determination of relatedness on its mistaken view of these actions as "seeking recovery from" the insurance proceeds, elevating HA-LO's mere underlying motive in getting at those funds to an erroneous legal characterization of them as a direct effort to obtain the money.

10

When the Bankruptcy Court addressed whether the Class Plaintiffs' suit was "related to" the HA-LO bankruptcy, and thus within its jurisdiction, it relied on selected parts of several formulations of the §1334(b) standard. Initially it observed that, "in limited circumstances," bankruptcy courts have been permitted to block third party lawsuits involving funds outside the estate if the suits are related to the bankruptcy trustee's "work on behalf of the estate." Tr. 19, citing *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (quotations omitted). The court went on to state that it was permitted to enjoin such a proceeding when it "'would defeat or impair its jurisdiction over the case before it,'" quoting *In re L&S Industries, Inc.*, 989 F.2d 929, 932 (7th Cir. 1993). Tr. 19-20. Ultimately the court settled on language suggesting the broadest possible authority. See Tr. 20 (proceeding related to a bankruptcy if it "may affect the amount of property in the [bankruptcy] estate," citing *Fisher*, 155 F.3d at 882, or if it could "'have an effect on the bankruptcy estate'", quoting *Celotex*, 514 U.S. at 308, n. 5). The court made no mention of the admonition, on the same page of *Celotex*, that the jurisdiction of bankruptcy courts over third party lawsuits was not "limitless," 514 U.S. at 308.

The Bankruptcy Court based its holding that the Class Plaintiffs' suit was related to HA-LO's bankruptcy on *Fisher*, and ruled that it had jurisdiction because the suits were sufficiently related as to "'convert the bankruptcy proceeding into a race to the courthouse that would derail the bankruptcy

11

proceedings.'" Tr. 21, quoting *Fisher*, 155 F.3d at 883. The court further relied on *Megliola v. Maxwell*, 293 B.R. 443, 447 (N.D. Ill. 2003), in considering only "the impact of the third-party action on the bankruptcy estate" and ignoring "the interests of the third party asserting the claim to be enjoined." Tr. 21. The court concluded that, because the Class Plaintiffs might recover in their suit against the Intervenors and Mr. Kelley, and because they in turn might draw on the insurance proceeds to pay that judgment, the suit should be enjoined simply because HA-LO was seeking to obtain those proceeds as well and had, in the Bankruptcy Court's view, a superior right to do so. Tr. 22-23, 26.

Finally, the court dealt specifically with the claims of the Intervenors that the injunction unfairly infringed on their contractual right to make use of the proceeds of the D&O insurance policies HA-LO had purchased to protect them from liability in cases like the Class Plaintiffs' suit. The court observed that it was "aware that there are officers and directors who are competing for the proceeds of the policies, just as the debtor [HA-LO] and the shareholder plaintiffs [*i.e.,* the Class Plaintiffs] are," Tr. 26, once again failing to distinguish between the Class Plaintiffs and HA-LO, who will have no direct claim on the policy proceeds, and the Intervenors and Mr. Kelley, who do. The court held that *creditors* were entitled to priority over shareholders, but did not say how or why they are also entitled to priority over the third-party beneficiaries of insurance policies. Although the court claimed that its "action is not intended to favor one director over another," Tr. 26,

12

it had exactly that effect, favoring Mr. Kelley over the Intervenors by assuring him first crack at the proceeds of the policies.[3]

In conclusion, the court granted HA-LO's request for a preliminary injunction in part. It permitted the Class Plaintiffs' suit to proceed through discovery, and even trial, but barred any use of the D&O policy proceeds to pay any judgment or settlement in that case until HA-LO's adversary action against Mr. Kelley is resolved. Tr. 26-27. The court followed its oral ruling with a written injunctive order (included in the Appendix as Exhibit 2).

## ARGUMENT

### I. Standard of Review.

In reviewing an order of the Bankruptcy Court, this court applies the same standard of review as would be applied in the Court of Appeals; factual findings are reviewed for clear error, while conclusions of law are reviewed *de novo*. *In re FedPak Systems, Inc.*, 80 F.3d 207, 211 (7th Cir. 1996). As there are no factual disputes in this case, the issues related to the bankruptcy court's jurisdiction under 28 U.S.C. §1334(b) present questions of law subject to this court's plenary review.

---

[3]The court recognized the possibility that Mr. Kelley would be denied coverage by the insurance companies based on the "insured vs. insured" clauses in the policies, but declined to resolve the issue, stating simply that, despite that "open question," HA-LO was likely to prevail on the merits. Tr. 23-24.

II.     **The Bankruptcy Court Had No Jurisdiction To Grant The Injunction Because the Class Plaintiffs' Suit Is Not "Related To" The HA-LO Bankruptcy Proceeding.**

Jurisdiction is vested in the bankruptcy courts, as arms of the district courts, through 28 U.S.C. §1334(b), which provides, in pertinent part, that those courts have jurisdiction over matters "arising in *or related to* cases under" the Bankruptcy Code (hereinafter "the Code") (emphasis added). See generally *FedPak Systems*, 80 F.3d at 215. Section 105(a) of the Code, 11 U.S.C §105(a), under which the Bankruptcy Court entered the injunction in the instant case, provides courts exercising bankruptcy powers with the ability to enter "any order, process or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." Although the grant of power under §105(a) of the Code is broad, it is cabined by the requirement in §1334(b) that the exercise of jurisdiction concern a matter "related to" the bankruptcy proceeding.[4/]

Contrary to the wide-ranging view of the Bankruptcy Court, the Court of appeals has directed that the "related to" clause of §1334(b) be strictly construed. The provision is "primarily intended to encompass tort, contract and other legal claims *by and against the debtor*," in order to permit those claims to "be *determined* in the same forum." *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994) (emphasis added); see also *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987) (bankruptcy jurisdiction "designed to provide a single forum for dealing

---

[4/]There is no suggestion in this case that the Class Plaintiffs' lawsuit "arises in" the HA-LO bankruptcy.

14

with all claims to the bankrupt's assets. It extends no farther than its purpose."). Accordingly, the "related to" provision is not to be "[t]aken at its full breadth," *Zerand-Bernal*, 23 F.3d at 161, but is to be "interpreted. . . narrowly" in order to avoid undue extensions of jurisdiction. *FedPak Systems*, 80 F.3d at 214. A narrow reading of the otherwise somewhat expansive term "related" reflects the fact that "common sense cautions against an open-ended interpretation of the 'related to' statutory language 'in a universe where everything is related to everything else.'" *Id.*, quoting Gerald T. Dunne, *The Bottomless Pit of Bankruptcy Jurisdiction*, 112 Banking L.J. 957 (November-December 1995).

The Intervenors recognize that injunctions may be entered under § 105(a) against lawsuits that involve claims that are not property of the bankruptcy estate. See *Fisher*, 155 F.3d at 880. Nonetheless, that principle did not relieve the Bankruptcy Court of the obligation, described above, to tread carefully in construing the "related to" provision. The Bankruptcy Court ignored this admonition, instead reading it broadly to permit an injunction against the use of insurance proceeds that are not property of the bankruptcy estate and against which neither HA-LO nor the Class Plaintiffs (whose suit was enjoined) can claim, and in derogation of the coverage rights of the Intervenors, who can make such a claim. It did so based solely on the possibilities that HA-LO will obtain a judgment against Mr. Kelley in its adversary action *and* that the insurance companies will then provide him with coverage despite the "insured vs. insured"

15

policy exclusions. These contingent events were enough for the Bankruptcy Court to rule that, because the proceeds might eventually make their way into HA-LO's hands, it could enter an injunction to try to make sure that they did, despite the fact that HA-LO has no direct claim on the proceeds.

The Bankruptcy Court's holding represents neither the required narrow reading of the "related to" statute nor management of the property of the estate; it is, instead, an effort to expand jurisdiction into a dispute to which HA-LO is not a party and turn money into property of the estate that might otherwise never become any such thing. This view of relatedness jurisdiction would support an injunction against any suit or claim lodged by anyone against any person or entity HA-LO had a claim against, based on the contingent possibility that an adverse decision against that person or entity would reduce what that person or entity might have available to pay HA-LO if HA-LO won *its* claim against them. This is not, as the Bankruptcy Court claimed, merely elevating creditors over shareholders (Tr. 26); it is elevating creditors over *everybody*. It is jurisdiction that is, in a word, "limitless."

**Fisher.** The Bankruptcy Court relied on two cases in support of its ruling. The first, *Fisher*, is readily distinguishable. In *Fisher*, a group of creditors ("the Apostolou Plaintiffs") who had invested in a bankrupt company sued individual defendants ("the Apostolou Defendants"), who had managed that company, for securities fraud. The Apostolou Plaintiffs consisted of just over half of the total

16

number of defrauded investors. 155 F.3d at 878. The bankruptcy trustee obtained an order under §105(a) requiring that the Apostolou Plaintiffs' claims be dismissed without prejudice so that the trustee could pursue the same claims against the Apostolou Defendants on behalf of all the estate's creditors, including the Apostolou Plaintiffs. In upholding the entry of this injunction against a relatedness challenge, the Seventh Circuit emphasized the importance of substantial identity of the claims, parties and pockets between the creditor group's suit and the trustee's action:

> [The Apostolou Plaintiffs] stand in exactly the same position as the rest of the aggrieved investors, *pursuing identical resources for redress of identical, if individual, harms.* As creditors with claims so closely related to the [bankruptcy] estate, the Apostolou Plaintiffs must wait their turn behind the trustee, who has the responsibility to recover assets for the estate on behalf of the creditors as a whole. . . . [T]he trustee in this case has claims against the Apostolou Defendants and is pursuing them to maximize the debtors' estates for the benefit of their creditors, *including the Apostolou Plaintiffs.*

155 F.3d at 881 (emphasis added; citations omitted). Although the *Fisher* court acknowledged that the claims did not have to be entirely identical, *id.*, it emphasized that its finding of relatedness was supported by a high degree of "overlap":

> While the Apostolou Plaintiffs' claims are not "property of" the [bankruptcy] estate, it is difficult to imagine how those claims could be more closely "related to" it. *They are claims to the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy.* . . . [I]t is a question of whether the overlap between the claims of the debtor. . . and the claims of the creditors (the Apostolou Plaintiffs) are so closely related that allowing the creditors to convert

17

the bankruptcy proceeding into a race to the courthouse would derail the bankruptcy proceedings.

155 F.3d at 883 (emphasis added). The court also noted that only by stopping the Apostolou Plaintiffs' case could the bankruptcy court determine, after the trustee had completed his action, the extent to which that action had already compensated the Apostolou Plaintiffs (as creditors themselves) for what they were suing over separately. *Id.*

This case is critically different than *Fisher*. Unlike *Fisher*, in which the Apostolou Plaintiffs sued the identical defendants as did the trustee, 155 F.3d at 879 (bankruptcy court "stayed[ed] the Apostolou Plaintiffs' lawsuits until the trustee completed his pursuit of the Apostolou Defendants"), in this case the Class Plaintiffs have sued both the Intervenors and Mr. Kelley, while HA-LO's adversary action names only Mr. Kelley; thus the Class Plaintiffs' suit threatens the assets of a group of defendants (the Intervenors) not a part of the HA-LO suit. In addition, while the HA-LO adversary proceeding seeks damages limited to that caused by Mr. Kelley's personal conduct with respect to the Starbelly acquisition, the Class Plaintiffs' suit charges its larger group of defendants with a broader array of misconduct, including, in addition to the Starbelly deal, accounting fraud that predates that transaction and misstatements that occurred afterward. Accordingly the Class Plaintiffs' suit is not about the same defendants, the same acts, or the same individuals performing those acts. *Fisher*, which allowed a bankruptcy trustee to use an injunction to police renegade creditors seeking to

18

assert claims against identical defendants that the trustee could herself have asserted on behalf of all creditors, has no application to this case. Under *Fisher*, HA-LO's pursuit of Mr. Kelley for his Starbelly-related actions stands unfairly to deprive the Intervenors of their insurance protections regarding their own conduct in that matter as well as other actions that are not the subject of HA-LO's suit.

More critically for the Intervenors, the suits are not about the same "pool of money." In both the HA-LO adversary proceeding and the Class Plaintiffs' suit, the defendants have been sued individually, and those suits thus make claims directly only as to their personal assets. Needless to say, the Intervenors' assets are not Mr. Kelley's. The Bankruptcy Court and HA-LO relied on *Fisher* to go after a different "pool of money" from those assets, namely the proceeds of the D&O insurance policies. There was no issue of insurance in *Fisher*, though, and that case does not support the notion that the Bankruptcy Court could prematurely import insurance proceeds over which it had no direct claim into the bankruptcy estate before anyone materially covered by the policies has even been subject to a judgment, much less before the insurance companies have agreed (or been ordered by a court) to pay it.

While, "[i]n limited circumstances," §105(a) may authorize injunctions involving "*claims* that are not property of the [bankruptcy] estate," *Fisher*, 155 F.3d at 882, that case does not authorize blocking third-party beneficiaries of insurance policies from access to insurance over which the estate has no direct

19

claim.[5] Indeed, although both HA-LO and the Class Plaintiffs *hope* to obtain the money that those proceeds represent (if they first win their cases and if the insurance company agrees to provide coverage, the latter a point of dispute as to Mr. Kelley), they have no direct claim on them and the chance they will do so is too speculative and hypothetical to justify a finding of relatedness between those proceeds and the HA-LO bankruptcy estate.[6] The sole purpose and effect of the injunction entered in this case is to deny the Intervenors their coverage under the policies in favor of Mr. Kelley and HA-LO. While the Apostolou Plaintiffs in *Fisher* were, as creditors, entitled to obtain compensation through the trustee's suit for some or all of the harm they tried to sue over themselves, 155 F.3d at 883, the Intervenors will have no such offset; if HA-LO obtains its judgment against Mr.

---

[5] Although the Bankruptcy Court did not decide whether the proceeds of the policies were "property of the estate," deeming resolution of that question unnecessary, Tr. 27, the weight of authority holds that the *proceeds* of D&O policies (as distinguished from the policies themselves) are not property of the estate of the bankrupt company for which the directors and officers worked where, as here, the policies do not cover the debtor corporation for any claim that has been made and where the debtor corporation has not claimed against the policies for, or been required to pay, any indemnification to the officers or directors. See , e.g., *In re Adelphia Communications Corp.*, 298 B.R. 49, 52-53 (S.D.N.Y. 2003); see also *In re Louisiana World Exposition*, 832 F.2d 1391, 1399-1401 (5th Cir. 1987); *In re Youngstown Osteopathic Hospital Assn.* , 271 B.R. 544, 550-51 (N.D. Oh. Bankr. 2002). The narrow reading of the "related to" provision required in this Circuit suggests that bankruptcy courts should, at the least, exercise care in extending jurisdiction over property the estate does not own.

[6] See *City of Joliet v. Bank One, Chicago, N.A.*, 210 B.R. 556, 560 (Bankr. N.D. Ill. 1997) ("The mere possibility of some effect from an indemnification claim is not enough to pose 'related to' jurisdiction"); *Pintlar Corp. v. Fidelity & Cas. Co. of N.Y.*, 124 F.3d 1310, 1314 (9th Cir. 1997) (possibility that creditors *might* have difficulty collecting damages from defendants it sued in adversary action does not warrant interfering with rights of third party to pursue its legal remedies in the forum of its choice); *In re Farmland Indus., Inc.*, 291 B.R. 489, 498 (Bankr. W.D. Mo. 2003) (bankruptcy court lacks jurisdiction over the process which determines a third party's liability to another third party); *cf FedPak Systems*, 80 F.3d at 214 (issue not related because need for order was "speculative and hypothetical" and it was "by no means certain" that order would "have *any* effect whatsoever on the bankruptcy estate.").

20

Kelley and the D&O insurers pay the proceeds to him, the Intervenors will be left unprotected by the insurance HA-LO specifically bought to protect them. Thus, unlike the Apostolou plaintiffs in *Fisher,* they are decidedly worse off than they would otherwise be as a result of the injunction.

***Megliola.*** The Bankruptcy Court also relied on *Megliola v. Maxwell,* 293 B.R. 443 (N.D. Ill. 2003). In that case Judge Grady upheld an injunction entered by the bankruptcy court under §105(a) against prosecution of a securities fraud class action against three officers of a bankrupt company called Marchfirst. The suit was filed in 2000, and in 2001 Marchfirst filed for Chapter 11. The bankruptcy trustee then filed an adversary action for breach of fiduciary duty against eleven Marchfirst directors and officers, including all three that had been named in the securities fraud suit. Prior to filing for bankruptcy, Marchfirst had purchased insurance covering both itself and its directors and officers from securities fraud claims. 293 B.R. at 444-45. The trustee, seeking to prevent the securities fraud plaintiffs from gaining access to the D&O policy proceeds, obtained an injunction from the bankruptcy court against pursuit of the securities fraud suit. On appeal Judge Grady upheld the injunction. Although his opinion generally discusses the power of a bankruptcy court to enjoin third-party suits, a power which, in "limited circumstances", is noted in *Fisher,* Judge Grady ultimately upheld the injunction based solely on "the insurance situation." 293 B.R. at 449. His opinion does not distinguish between the assets of the various

21

defendants at risk in the two suits and the proceeds of the insurance policies that the trustee was pursuing.

*Megliola* is, like *Fisher*, distinguishable from this case in critical respects. *Megliola* involved stopping a suit against a group of defendants who were *all also named in the trustee's suit*, while in this case just the opposite is true: Mr. Kelley is the only defendant in the HA-LO bankruptcy action, while the Bankruptcy Court enjoined a suit against him *and* the Intervenors. Thus, in *Megliola*, the three defendants in the enjoined suit had no fear of losing the benefits of their D&O coverage because they were included in the trustee's suit as well and would receive the benefit of their insurance protection there. This likely explains why they did not seek to intervene in the injunction proceeding (as the Intervenors did here) and why neither the bankruptcy court nor Judge Grady had occasion to consider whether they could be deprived of the benefit of insurance purchased specifically to protect them.[7]

In summary, the Bankruptcy Court pushed the concept of relatedness too far when it entered an injunction effectively depriving the Intervenors of the protection of insurance purchased for their, and not HA-LO's benefit, based on the

---

[7] Judge Grady's decision in *Megliola* was appealed to the Seventh Circuit, but on October 20, 2003, while briefing was still in progress, the parties filed a joint motion to stay the appeal while a settlement agreement was presented to Judge Grady. If that settlement takes place, the appeal would not be pursued.

indirect and speculative hope that the trustee might gain access to those proceeds. The injunction in this case represents an extension of jurisdiction that contravenes *Celotex* because it is "limitless" in its potential application. In effect, the Bankruptcy Court has improvidently erected a barrier around the proceeds of the D&O policies, one to which Mr. Kelley, alone among the policies' beneficiaries, has the key. These proceeds are not part of the HA-LO estate, and HA-LO has no direct claim on them. The court's purported justification–that Mr. Kelley might one day overcome the "insured vs. insured" exclusion and tap into the proceeds in a way that resulted in a benefit to HA-LO's estate–raises more questions than it answers. Application of the rule laid down by the Bankruptcy Court's decision could as easily hold up a third-party claim against Mr. Kelley's automobile or homeowner's insurance, as the proceeds of those policies might, like those of the D&O policies at issue herein, add to his personal assets and thus ultimately benefit the HA-LO estate. The Bankruptcy Court's holding expands its jurisdiction beyond the limits contemplated by §1344(b) and interpretive case law, and could spawn a bankruptcy octopus with tentacles extending well outside the bankruptcy estate and into the pockets of unsuspecting and unrelated claimants.

The Bankruptcy Court misconceives its mission as supporting the trustee's efforts to grow the estate at any cost to anyone, regardless of the tenuousness of the link between the estate and the money the trustee seeks. It erroneously focused on the relationship between the parties, and especially Mr. Kelley, to the

23

estate (he is a defendant in its adversary proceeding), and ignored the guiding principle set forth in *Xonics* that "it is the relationship of dispute to estate, and not of a party to estate, that establishes jurisdiction." 813 F.2d at 131. Addressing the issue in this analytical framework compels a different result. Allegations in the Class Plaintiffs' suit materially differ from those in the adversary action brought against Mr. Kelley, and present claims against the assets of individual defendants. As discussed, they involve acts that predate and do not concern the Starbelly transaction that is the focus of HA-LO's adversary complaint, as well as allegations of accounting irregularities also not a part of that complaint. The existence of insurance that might ultimately be used to satisfy liabilities resulting from that dispute (*i.e.*, the Class Plaintiffs' suit) is a serendipitous fact extrinsic to that dispute, and the dispute itself does not give rise to a claim against the D&O proceeds except by the contingent and hypothetical construction of HA-LO and the Bankruptcy Court.

As even the *Fisher* court observed, the trustee "may not roam around collecting whatever property suits her fancy. Her task instead is to recover and manage the 'property of the estate.'" 155 F.3d at 880. The injunction in this case enables the trustee to do far more. Instead of simply seeking to recover *property* of the estate, the estate endeavors to predict the future and enlist the Bankruptcy Court's aid in protecting the assets of an individual for the sole benefit of a bankruptcy estate that enjoys no present interest in such assets. It invokes the

24

jurisdiction of the bankruptcy court merely to "get a leg up on the competition", and in so doing unfairly subordinates the direct claims of the Intervenors to hypothetical and indirect interests of the bankruptcy estate.

*Fisher* blessed injunctions in situations where cases "are so closely related that allowing the creditors to convert the proceedings into a race to the courthouse would derail the bankruptcy proceedings." 155 F.3d at 883. This cannot be true herein because HA-LO has no claim on the insurance proceeds that it has not created out of hypotheticals and possibilities. No injunction is necessary to permit the estate to control what belonged in it, thus preventing "derail[ment]"; instead, the Bankruptcy Court is itself laying down tracks well away from the estate on the chance that there may be a pot of gold at the end of them.

For these reasons, HA-LO has not established a likelihood of success in demonstrating that the Class Plaintiffs' suit is "related to" the HA-LO bankruptcy proceeding, as that limited term is used under 28 U.S.C §1334(b), and this court should vacate the Bankruptcy Court's injunction.

**III. The Bankruptcy Court's Injunction Undermines The Important Public Interest In Protecting D&O Coverage For Corporate Officers And Directors.**

The *Fisher* court held that, in considering whether an injunction should be granted under §105(a) of the Code (or upon review of such an injunction), the court need not consider all four factors traditionally associated with preliminary injunctions. 155 F.3d at 882. Nonetheless, *Fisher* did not relieve that court, or

25

this one, from considering a factor in addition to whether the enjoined dispute was related to the bankruptcy proceeding, namely whether the injunction would harm the public interest. 155 F.2d at 882. The *Fisher* court was willing to rely on the general purposes behind the Bankruptcy Code in holding that the injunction in that case did not. *Id.* In the instant case, the Bankruptcy Court focused entirely on the rights of the Class Plaintiffs in briefly observing that the public interest was not disserved. Tr. 24. In doing so the court overlooked an important public interest that is directly undermined by the injunction in this case: the interest in assuring that officers and directors will serve businesses without fear that insurance protection they bargain for as part of their compensation is not negated solely because of their employer's bankruptcy.

The deference due the contractual rights of directors and officers was discussed extensively by the bankruptcy court in *Adelphia*. That court emphasized the importance of maintaining D&O coverage as "a safeguard of officer and director interests and not a vehicle for corporate protection." *In re Adelphia Communications Corp.*, 285 B.R. 580, 597 (S.D.N.Y Bankr. 2002), vacated on other grounds, 298 B.R. 49 (S.D.N.Y 2003). It recognized that directors and officers need to serve with the assurance that their protection from liability, upon which they relied in agreeing to serve, would not be threatened by bankruptcy, and cautioned that "bankruptcy courts should be wary of impairing the contractual rights of directors and officers even in cases where the policies provide entity

coverage as well." 285 B.R. at 598. Here, of course, the D&O policies provide no relevant direct coverage to HA-LO, offering even less of an occasion to impair the rights of the Intervenors in favor of HA-LO's tangential claim on their proceeds.

The Bankruptcy Court in this case did not take the slightest care to honor the contractual rights of the Intervenors. It assigned them no weight, simply observing that their loss was a consequence of enjoining the Class Plaintiffs' suit. Tr. 26. This view of the case treats the reality of the Intervenors' situation too cavalierly and disregards the threat to the Intervenors' rights presented by the injunction. That injunction prevents the Intervenors from using the proceeds of the policies they received as part of their compensation for serving in those capacities to provide the protection from liability they bargained for, but does not similarly constrain Mr. Kelley in his dispute with HA-LO. Accordingly, nothing now prevents Mr. Kelley from settling with HA-LO - which has estimated its damages to far exceed the value of the policies - and claiming against the policies for their full amount, leaving the Intervenors with no protection from liability in the Class Plaintiffs' suit and exposed to the prospect of bankruptcy themselves. It is no answer to this contention, as HA-LO has argued, that the Intervenors' personal assets are "available" to pay any judgment. Even if the Intervenors had sufficient assets to pay a judgment obtained by the Class Plaintiffs, they would still have lost the contractual right to insurance to protect those assets.

This court should not permit the Bankruptcy Court to so undermine the

contractual rights of the Intervenors. The precedent set thereby would result in a cloud of doubt over the ability of directors and officers to rely on their employers to provide them with protection from liability that would survive bankruptcy, and therefore will directly affect their willingness to serve in those positions. When HA-LO was a going concern it had creditors, but it could not have retroactively cancelled insurance it bought for its directors and officers to reduce costs or access insurance proceeds in order to satisfy its creditors; why it should be able to do so now because it is bankruptcy remains a mystery. The need to ensure the willingness of officers and directors to serve is, as the *Adelphia* bankruptcy court recognized, an important public interest that militates against extensions of "related to" jurisdiction that would dilute these contractual rights. For this reason as well, this court should reverse the decision of the Bankruptcy Court, vacate the injunction, and permit the Intervenors, as Mr. Kelley has been permitted, to avail themselves of their rights under the D&O policies.

**CONCLUSION**

For the reasons stated herein, the decision of the Bankruptcy Court should

be reversed.

Dated:  September 29, 2003                    Respectfully Submitted,


                                              LOU WEISBACH, on behalf of himself
                                              and BRADLEY KEYWELL, GREGORY
                                              KILREA, ERIC LEFKOFSKY & LINDEN
                                              NELSON


                                              By: _____
                                                    One of their attorneys


Thomas M. Durkin                              Bart T. Murphy
Joel D. Bertocchi                             Samuel S. Cohen
Richard G. Ziegler                            Wildman, Harrold, Allen & Dixon
Sheri L. Drucker                              225 West Wacker Drive, Suite 2800
Mayer, Brown, Rowe & Maw LLP                  Chicago, IL  60606-1229
190 S. LaSalle Street                         (312) 201-2000
Chicago, IL  60603
(312) 782-0600


Allan Tracy Slagel                            Simon J. Hill
Howard A. Davis                               Bradley J. Schram
Patricia S. Spratt                            Hertz, Schram & Saretsky, P.C.
Shefsky & Froelich, Ltd.                      1760 South Telegraph Road, Suite 300
444 N. Michigan Avenue                        Bloomfield Hills, MI  48302
Chicago, IL  60611                            (248) 335-5000
(312) 527-4000


Thomas P. Cimino, Jr.                         Steven R. Lefkofsky
Vedder, Price, Kaufman & Kammholz             Petersen & Lefkofsky
222 N. LaSalle Street                         39533 Woodward Avenue
Suite 2300                                    Suite 170
Chicago, IL  60601                            Bloomfield Hills, MI  48304
(312) 609-7500                                (248) 644-6400


Robert P. Cummins
Cummins & Cronin
77 West Wacker Drive, Suite 4800
Chicago, IL  60601
(312) 578-0500


29

# APPENDIX

Exhibit 1    Transcript of Proceedings, July 16, 2003, before the United States
             Bankruptcy Court for the Northern District of Illinois, Eastern
             Division, the Honorable Carol A. Doyle.

Exhibit 2    Order of the Bankruptcy Court, July 21, 2003.

Exhibit 3    Amended Complaint, *Spagnola v. Kilrea*, No. 02 C 0270 (N.D. Ill.)

Exhibit 4    Adversary Complaint, *HA-LO Industries, Inc. v. Kelley*, No. 02 C
             6227.

# See Case File For Exhibits